22-5300 Jason Leopold and BuzzFeed Inc. Appellants v. United States Department of Justice Mr. Mouch for the appellant, Mr. Dreyer for the appellate. Good morning Mr. Mouch. You know the podium is adjustable if you chair to confess it. Good morning. Can you hear me? Yes. Great. May it please the court. I plan to focus on two things this morning. First, how FOIA's foreseeable harm requirement interacts with Exemption 8. And second, how the requirement applies in this case. The foreseeable harm requirement interacts with Exemption 8 the same way it does the other exemptions. As this court held in Reporters Committee, it imposes an independent and meaningful burden on agencies. That burden requires the agency to make a concrete, context-specific showing of how disclosure of the specific material at issue would, not could, harm an interest protected by the exemption. And it applies at the level of information rather than records, which means that agencies must produce redacted versions if they can do so without causing harm. Exemption 8 is distinct from the other exemptions only in the interests it protects. Those interests are surely important, but the whole point of the foreseeable harm requirement is that disclosing some exempt material will not harm those interests. In which case, the public is entitled to that material. There's no reason to believe Exemption 8 is any different. Is there any difference between the analysis of the interests in a routine bank examination as distinct from a deferred prosecution agreement? Yes. The context of the deferred prosecution agreement is quite important here. In a deferred prosecution agreement, the bank has already agreed to cooperate fully with the monitor. Breach of that agreement results in sort of rescission of that agreement and prosecution. So in that case, the bank knows. So I take it this is related to the sort of interests in assurance of confidentiality that the monitor might have. And cooperation. And cooperation. Concerns that if the redactions are going to be in someone else's hands, that a bank subject to examination and or monitor's examination would be less cooperative. And I think you put your finger on it. But the question is, really, there's a lot of incentive under a DPA to cooperate. Exactly. And ordinarily, a perfectly law-abiding financial institution that is being examined by federal regulators, you know, they're under legal obligation to cooperate. But it's a different, potentially different calculus. And I'm just not sure that that's something cognizable in the terms of FOIA. But I'm interested in it. So I think it is cognizable because this court instructed in reporter's committee that the context is sort of is relevant and important in considering the harm that would result. I would also emphasize that in the context of a deferred prosecution agreement, if the agreement is breached and the bank doesn't cooperate, sensitive information is going to come out anyway to public trial. And that information, unlike this case, is not going to be redacted under FOIA. So, in fact, this is a far better situation for a bank than – or, I mean, I'm sorry, it's a far worse situation for the bank to have less bargaining power than they would have in sort of a routine monitorship, where the consequences of not being fully candid with the monitor is not criminal liability and the prospect of potentially much more sensitive information coming out of trial. Again, here, we're not asking for the whole report. We're not asking for the sensitive stuff. So you're starting from the baseline of the redactions that Judge Gleeson approved or something along those lines, that all you're saying is that, granted, there's going to be identifying information about 300 employees that were interviewed. Granted, there's going to be information detailing processes that bad actors might want to exploit, bank processes for preventing money laundering. Granted, there might be country names and references to confidential material that foreign regulators provided, that all that would be redacted in response to the claimed interests that the government has raised. But your point is, what is the showing of harm with respect to the balance of it? That's exactly right. That's exactly our position. Judge Gleeson pointed out, I would recommend footnote 11 of his decision where he says that some of the least sensitive parts of the report concern the monitor's processes. We're reaching his conclusion, the sort of general conclusions he reached. He said very few redactions will need to be made to those parts of the report. There's also the United States country report, which presumably doesn't have concerns with foreign jurisdiction information. Each jurisdiction had its own dedicated appendix, one of which was the United States. We're asking for that one. We're not asking for the five foreign jurisdictions. And you're right. We're not asking for information that discloses current security vulnerabilities. DOJ has conceded that many of the vulnerabilities have been rectified. Judge Gleeson found the same. Interesting to me, just following up on my initial question, whether you can elaborate at all about if we were to hold that. The foreseeable harm requirement has not been met here. How could we distinguish or at least leave open whether our holding would apply to routine bank examination reports? I think you could distinguish this case or leave it open sort of on the grounds that you opened your question, your first question with limit the decision to cases where a bank is subject to a deferred prosecution agreement. Because there the bargaining position of a bank, its leverage fees to be its regulator is different from and maybe its bargaining position, but also the consequences for not being candid are far different from a sort of routine bank examination report. So there you're saying the harm is the harm to the financial regulatory system. That harm might be more is is predictable. That it would be harmful in the case where there's no deferred prosecution agreement, it is not clear that it would be harmful in the case in which there is one. Well, I mean, I don't want to say that it would be harmful. I'm saying that it would be the harm calculus would be different. I think the harm, the harm calculus in our case means there's less harm. You don't need to decide that case. All you need to say is that this case is they haven't met their burden here. And that case is a different case that you're not deciding. I think that's how I would recommend approaching it. By referencing the harm, I was just trying to relate that. I mean, we understand that as a kind of policy matter, but how does it fit in for you? And so that's why I'm talking about the harm that would work. Right. So the harm that that this court is articulated. So, I mean, this court is articulated to harms relevant to exemption aid, one of which is the one I think you're talking about, which is sort of maintaining relations between the bank and the regulator, maintaining sort of candid communication between them. Yes, I think I think the point is because HSBC was being prosecuted and. You know, violation of the DPA would have would have led to the resumption of that prosecution. The prospect of disclosing fairly innocuous information in a report is not going to deter it from not cooperating because if it did, that sensitive stuff would come out anyway. It would get prosecuted. That's just not the case for a sort of a routine bank examination report about the, I mean, the foreseeable harm. Obligation, as you point out, and Borders Committee is one that we apply even to information that is exempt, but we also apply it differently depending on the nature of the exemption and the nature of the interest that the exemption serves. And we have our cases like Gregory, which talk about the absolute nature of the protection under exemption eight. And we have a raft of district court cases that routinely do analysis analysis under exemption eight on a on a pretty broad basis, the whole report. So, I think it's important to distinguish the exemption from the foreseeable harm requirement. I think this is the only case. In which the district court has applied the foreseeable harm requirement to exemption eight. Maybe there's others. I'm not aware of them in this court course has not done that. So, yes, Gregory said something about exemption eight provides absolute protection to what it covers. That's not a foreseeable harm case. And so that also absolute, but does absolutely for a scope. It's a little bit unclear. Well, so, yeah, I mean, I think I think absolute refers to the scope of the exemption and not the harm. It would result from disclosure. Gregory just wasn't asking that question because there was no foreseeable harm requirement at the time it was decided. Of course, the foreseeable harm requirement sort of could make a difference in a case only if the material is exempt because of the materials not exempt. The government has to disclose it, whether or not causing or disclosing it would cause harm, which emphasizes sort of the, the, the, the need to conduct a rigorous foreseeable harm analysis. Less the provision be rendered meaningless. You're right that the, the, the analysis is different depending on the exemption. DOJ references the importance of the interest protected by exemption eight. Again, we're not disputing that the interest is important. That's why we're not asking for large portions of the report. Of course, every exemption protects important interests and that what the agency has to do in any case under the foreseeable harm requirement is show that the interest articulates applies to the material that it wants to withhold. That, I mean, it hasn't done that for the passages of the report that we are asking that they be ordered to disclose. This may be well, may I ask a question? And this is Judge Rogers. I'm only on audio. Unfortunately, I can hear you loud and clear. Good. I want to be clear that I understand exactly what your argument is in terms of what you think the district court here failed to do. In other words, as I hear your argument, and maybe I'm wrong about this. You're not saying the district court couldn't reach the same result, but that he failed to do what he was required to do under FOIA, given that the district court in the Eastern District of New York had reached a different conclusion based on different findings. Is that correct? In other words, what I'm trying to understand here is I know you made an objection to the hearsay nature of some of the government's evidence. But the district court ruled it was admissible. He could consider it, and he did. And the theory here, as we've all learned in a lot of these top secret cases, is you don't need to know the most damaging material about someone for it to have a negative impact on the government's interest in prosecution or investigation. And I sort of read the district court to think in that way, too. So let me try to answer your question and let me know if there's a part that I missed. I just want to make one correction. The district court actually we didn't interpose a hearsay objection to everything. We did object certain documents based on hearsay, and the district could actually agree with us on that. So just one small point of clarification. There's no argument that the district court did not properly consider the hearsay filings by the foreign government. Well, the district court declined to consider those materials because they were hearsay. The government is appealing that or it's arguing that that decision was wrong, but the district court declined to consider those. And so your point is that absent consideration of that type of evidence, we would have to reverse. So I think whether you consider that evidence or not, you would have to reverse. We've given three independent grounds for reversal here. The first is that DOJ's evidence is insufficient to meet its burden under FOIA, which would require entry of partial summary judgment for us on Exemption 8 foreseeable harm. In that case, we would ask the district court to review the monitor report and camera in conjunction with Judge Gleason's redactions. There's also other exemptions that it hasn't decided. So it would also have to consider those. Yes. My question wasn't that clear. It was that the district court here did not address the district court's findings in the Eastern District of New York. Yes, that's that's part of the error. It also didn't address. So I mean, the Judge Gleason's findings, the judge from the Eastern District of New York, are really only relevant to our second and third arguments for reversals. The first one, all you need to do is look at DOJ's evidence, conclude that it doesn't meet its burden. We were entitled to partial summary judgment. The second the second ground for reversal is sort of if you disagree with that, then both parties motions should have been denied because there is contrary facts. One of those facts is the factual findings of Judge Gleason. And the other is the monitors conclusion that part of his report could be released without causing harm. The third ground for reversal that we are asking, and I'm sort of going in our descending order of preference here is the district court should not have decided the motions at all without reviewing the report in camera, including Judge Gleason's redactions. And our argument there, you know, I fully recognize it's a deferential standard of review, and this court doesn't want to open the floodgates to mandatory in camera view and FOIA cases. But this is an unprecedented case as far as I'm aware, because we here we have a prior article three judge making essentially the same analysis after an in camera view and basically the same evidence and arguments that DOJ is making here. And on the other hand, the district court made its decision sort of without the benefit of that in camera view. And so at least before making a decision, it should have the reporting camera. We're not arguing that the district court is bound to follow Judge Gleason's decision. It should have considered it. It can redact more. It can redact less. It should at least look at what Judge Gleason did. Suppose we think the district court erred in not performing a segregability analysis specific to the foreseeable harm question, as opposed to the underlying exemption question. Why wouldn't we just send it back for the district court to perform that analysis? It's really that court's job in the first instance. I mean, I agree that it's that court's job in the first instance. There's no basis on which the court can make segregability finding without reviewing the report in camera. The district court ordered DOJ to update its segregability analysis in its first opinion. And DOJ came back specifically to address Judge Gleason's findings. DOJ came back with a very short declaration that didn't address the findings and sort of argued in a paragraph or two that they didn't matter. So on the current record, district court just couldn't make, I mean, based on its own conclusion in its first opinion, could not make an adequate segregability finding. If you agree that the finding wasn't made, I don't know what else it could have done based on what it had. It just didn't really have anything. So distinguishing between your first ground and your second, your first you said that we could hold that the evidence is insufficient to show that there is foreseeable harm, that there would be foreseeable harm from disclosure as to at least some portions of the report. And so you get partial summary judgment on some sort of undefined scope of the report and a remand for redactions as appropriate. And the second ground is that both motions should have been denied because a reasonable finder of fact could find consistent with the Eastern District of New York analysis and the monitor's own acknowledgement that some aspects could be disclosed. Now, how are those two different in the latter? We don't often have trials in FOIA cases. So would there be trial to resolve the factual conflict on whether or I mean, it feels more comfortable to rely on burdens. Yeah, so I mean, but here it seems like according to his first opinion that in his second opinion, Judge Contreras perhaps should have said to the government, you know, if you're right. And this is all we haven't decided the case, but assuming that you your arguments have have some, you know, are going to be would be credited in part. Would would we say, well, the government had an opportunity and came back with what it came back with in response to the district judge's first opinion, and it shouldn't get another bite at the apple. Like, how do we sort through that? So I think in general, you're right. So just please stop me if I'm not fully answering your question, but I think there's a few few parts to it. Right. Trials don't often happen in FOIA cases. And I think that in this case, it would be particularly hard to conduct one, given that we're, you know, the report that we are, you know, arguing about here is fully withheld. We can't exactly disclose it in open court. I think what I would recommend is that the district court. Conduct I mean, it would be sort of like a bench trial, but it just conduct factual findings or make factual findings based on an in-camera review. And those would be the findings of the court that could then be appealed based on the relevant standard review of either party would choose to appeal that. Has there ever has there been a bench trial on foreseeable harm in the several years since Congress added that to FOIA? I'm not aware of one. I'm not aware of one. So, whether we think of this as summary judgment, or just thinking of this as the district court resolving the issues before him, is there any difference? The government's put in what it wants to put in, and you've done the best you can in the very difficult position of not having seen the report. And they get whatever presumption of regularity they are or are not entitled to. And you argue that on the law. And the district court will just decide this based on what he has before him. I mean, if that includes the in-camera review, then I think there is very little difference. Well, but the in-camera seems different from the question of sort of how summary judgment should work in a FOIA case. So, I think in general, so maybe this is a way to sort of parse this out. Most FOIA cases don't involve the sort of procedural setup that we're in here, because most FOIA cases are decided solely on the basis of the government's declarations. And so the question is often the sufficiency of those declarations. And the sort of fact question just merges into the summary judgment question, because the district court assesses the government's declaration, and it's either good enough or it isn't. Exactly. But here we have… And then you have the statement by Mr. Churowsky saying, well, you could release some form of the report, but not much. That's just part of the government's affidavit. And Judge Gleeson's analysis under strict scrutiny in a FOIA case has whatever relevance it has, but that's not going to change with a further round of factual development that we'll call a trial instead of a summary judgment record development. So, are you saying that Judge… I mean, I think that if there is contrary… This is, I mean, I'm just sort of trying to apply Rule 56 in a FOIA case. It applies in a weird sort of way in FOIA cases, but it doesn't seem like the foreseeable harm requirement either was designed to or, in fact, has revolutionized FOIA by causing the need for a lot of trials. No, but I think… I mean, I do quite a bit of FOIA litigation, and the cases that are decided in the district court based on foreseeable harm are not really that different from the ones that are decided based on exemptions. Usually, it's just based on the sufficiency of the declaration. There have been bench trials in FOIA cases before the foreseeable harm requirement. Actually, I believe the Supreme Court's decision in Argus Leader followed a bench trial. So, they do happen. Again, we're not asking for that here because we think it would be hard to work with given the nature of the inquiry here. Yeah, I mean, the summary judgment rule applies well enough if you're looking at whether the government is affirmatively… Which bears the burden on the foreseeable harm point has affirmatively shown that no fact finder could find that there is a lack of foreseeable harm as to any part of the report. I mean, I take your position to be, therefore, you must be entitled to summary judgment on those parts. Correct. Any other questions? Judge Rogers, any questions? Thank you. All right, thank you. I ask that the court reverse and remand for camera review. Will you want rebuttal? Yeah, I believe I had asked for two minutes. I tend to mow past your comment. Also, give back. Okay. Thanks. Morning, Mr. Dreyer. Good morning. May it please the court. Douglas Dreyer on behalf of the Department of Justice. So, what I want to start on is the promises made to foreign regulators. Because I think what we saw a lot of in my friend's brief and somewhat in the argument here was a focus on, well, the foreign regulators must have only cared about the portions of information that they provided. But what the record actually shows in, for instance, the Hong Kong Monetary Authority's letter, in the Bank of Malaysia's letter, is that they were promised that the entire report would remain confidential. So, for instance, the Hong Kong Monetary Authority's letter said, we consider it important to bring to your attention the practical difficulties that publication of the report in full or part may present to the future work of the monitor. Bank of Malaysia said that it was, quote, assured that the report would only be disclosed to DOJ, the Federal Reserve Board, and U.K.'s Financial Conduct Authority. So, we have a situation in which government actors would be happy to assure confidentiality. But that can't affect the obligation of disclosure under FOIA. So, what this court said in Machado y Modest was that to withhold a responsive record, the agency must reasonably foresee that disclosure would harm an interest. Now, in order to determine whether the agency reasonably foresees that disclosure would harm an interest, one thing we're looking at is, well, what is the milieu here? And here we have foreign regulators who have sent – who submitted letters to the Eastern District of New York saying they want the whole report kept under seal. And so, if you're the agency looking at this record, and you're seeing these foreign regulators taking the time to submit letters and requesting disclosure – requesting that the report be withheld in full, then I think it's reasonable here for the agency to say, look, okay, this entire report, this one document, should be withheld in full because of these assurances of confidentiality that may – and they were written, too, for instance, in the Corporate Compliance Act. In the Corporate Compliance Monitor Agreement itself, it says the reports and the contents thereof are intended to remain and shall remain nonpublic. So, we just have the promise of the monitor. And I understand if the monitor has given assurances of confidentiality, then one might expect him to exercise his discretion consistent therewith. But the caveat for except it's required by law, why isn't FOIA that law? So, on that, just a point of clarification, the Corporate Compliance Monitor Agreement itself, it wasn't the monitor who determined that. It's the department. And so, the language there is that except to the extent that the department determines in its sole discretion that, one, disclosure would be in furtherance of the department's discharge of its responsibilities and duties and responsibilities, or two, it's otherwise required by law. Thank you for the clarification, but I'm not sure that that changes my question, unless you're making a point that you think it does. Well, my – and I'm sorry, just to make sure I'm answering your question. The department can determine that it wants to disclose it, but one would assume that if the monitor has said to foreign regulators, you know, you have my assurance that they would take him to be speaking with the authority of the Justice Department. But that doesn't resolve the except as required by law proviso. Well, so the otherwise required by law proviso must still consider whether the agency is reasonably foreseeing harm in the exemption-A context. And so, what we are saying is this is not just, hey, DOJ made a promise, the monitor made a promise, and we need to enforce that. We walk through in our declarations all the harms that can result as a result of the voiding of these promises. So this is not just – And what strikes me is that the analysis and the representations made in the declarations seem to support the applicability of Exemption 8, but they don't clearly treat the foreseeable harm requirement as a distinct and separate requirement in which the government bears the burden, even assuming that Exemption 8 applies. So the arguments that, you know, confidence of foreign governments, cooperation of their regulators, all go to the sort of wholesale, let's withhold the report. But I take Congress to have legislated to say, even things that are covered, you look specifically, and as Judge Katz has put it, do an effective segregability analysis under the foreseeable harm requirement. So what I'd say on that is – and what we're often seeing from my friend is there's this desire of, hey, this district judge who was reversed found these certain portions could be disclosed, and therefore there needs to be more said on these specific portions. But what the agency's declarations below and in this record say is, look, we've looked at this. We've looked at the entire report. We've conducted a line-by-line analysis, which has never been disputed. The line-by-line analysis was conducted. That's attested to. And we determined that the entire report must be withheld in full. So there isn't going to be a separate analysis of the reversed findings under the First Amendment and the common law right to access. The findings weren't reversed. I think that's a little bit of an overstatement. The Court of Appeals said we disagree with the threshold determination that Judge Gleeson made, which was that this document is a court filing subject to the public right of access. They didn't speak at all to the findings. And, in fact, they said the proper avenue is FOIA, and we're not resolving that. So the question is, given that the same interests were raised there as are raised here, the same confidentiality grounds, and those were looked at, and we have the opinion of Judge Gleeson explaining how he responded. And he said, I credit that. I credit that. I credit that. And here's what I'm doing. Here's what I'm doing about people who came forward to speak, keeping them confidential. Here's what I'm doing about the concerns of foreign regulators, leaving off all those appendices and mentioning no country names. So I'm not sure that we can say that any of that. I mean, we're not looking at it as binding precedent, as collateral estoppel in any way. We're just looking at it almost as if it's a declaration of some expert who looked at this material. And a reasonable finder of fact could look at that and say, oh, here's someone who read the report, who knows the situation, and made these determinations. How do we – what in the government submission allows us to say that none of that raises an issue? So in AUSA Kessler's declaration, it specifically says, paragraph 7, page 108 of the Joint Appendix, although the district court and HSBC Bank USANA concluded that certain portions of the report should be released to the public, the court's analysis in that case was not conducted in the framework of FOIA and did not consider the various FOIA exemptions, including FOIA exemptions 4 and 8 or 7A, nor did the court appear to apply the reasonably segregable standard of the FOIA case law. As a result, redacting only the limited categories of information proposed by the district court would not adequately address the interests identified in the government's filings in this case, most notably the interests underlying FOIA exemptions 7A and 8. And what I'd like to point to in – Word in what you just read about foreseeable harm. It is – I mean, then that's – it's coupled with all the rest of the declarations in the record that are going over each of the harms that we're seeing. The declarations are all pretty good for you, but they're just very gentle. Just talk about the report as a whole. Well, that's because this is – we are dealing with a single document, and a single document that the conclusion is it needs to be withheld in full. And one of the main reasons for that is we cannot void these assurances of confidentiality, and that's going to apply at the report level, not at the information level. Is that right? I mean, people cooperate – you know, witnesses cooperate all the time, and confidentiality tailored to their disclosure concerns suffices. You don't have to close entire days of trial or entire documents in which their testimony might be mentioned. It just doesn't – so it seems to me, and maybe this is your position, it seems like you're contending that in the context of exemption 8, the foreseeable harm requirement itself has to be applied on a full report basis. That's just the unit size for the foreseeable harm requirement. There is no segregability in that context. Is that right? I wouldn't phrase it quite like that. That's not how we're phrasing it here. I think that the point in this particular case is one of the harms is the voiding of the promises of confidentiality, and that applies at the report level. And so I agree that AA itself, the foreseeable harm requirement, speaks to information as opposed to records themselves. But here that needs to be assessed in the context of what the harm is. And here the harm is the voiding of these promises, which is not just an ethereal, you know, a harm that just matters in the abstract, but we've gone through in our declarations explaining how this would harm future prosecutions, future supervisory relationships. And the regulated entity here, HSBC Bank, it had more than 400 regulators. That's in the Monetary's affidavit. So this is going to require significant work across jurisdictions with different regulators working hand-in-hand. And in order for that to happen, they need to believe that the government's promises, which are made not just orally by the monitor, but in writing in the Corporate Compliance Monitor Agreement itself, will be honored. And if they won't be honored, the agency reasonably foresees harm would ensue. And the question for this court is whether the agency reasonably foresees harm in this instance. So what we've been focusing on, it seems to me, is the notion that these are very general statements. Mr. Kessler is saying this could happen, that could happen. It's not as though there's any instance. And I thought the concept that the district court here was addressing was if you have a system, and by analogy, a circle where you are getting all this highly technical, highly confidential, financial information from different governments around the world, that any break in that chain could be a problem. The question, it seemed to me, that we might ask is to consider whether or not if, and I think this is one of your hypotheticals, you know, the table of contents is disclosed, would everyone still be adamant about absolute secrecy? And maybe so, but that's not what we have so far. And at least we have two district court judges viewing this case so differently, and not almost two ships passing in the night in terms of some of the findings. And while the department is focusing on the promises made, question would be, and much as Judge Pillard's question I thought was getting at, yes, those promises were made. In light of the situation now, even after Congress's amendment, would that apply to everything? And the answer might be yes, but that's not what the government's declarations tell us so far. Isn't that correct? Well, I do think the government's declarations go through the significant harms here that would result if promises... No, no, they don't use the word would. All right? They repeatedly talk about could. And I don't want to get too technical about this, but a lot of things could happen, and I thought Judge Pillard's question was trying to focus on yes, but sometimes in the reality when we're talking about very specific things, views change. So, Your Honor, what I would say, for instance, in Deputy Chief Mazur's declaration in paragraph 19, she said public release of these reports would have injurious consequences to MLR's prosecution of financial institutions. There are certainly many instances in the declarations where it says could instead of would, but there are also many instances where it says would. And on the could-would distinction, in Reporters Committee itself, that says that this could-would distinction applies in the context of the deliberative process privilege, and I think there are two versions of the word could that are used. Foreseeable harm analysis. Right. The foreseeable harm analysis for deliberative process privilege, which was the heart of why Congress amended FOIA in 2016 as this court walked through in Reporters Committee. So I apologize. You're certainly correct, and I was focusing on the statement by Kessler. But at any rate, there are others that talk about would. Do you think, then, that from this court's perspective, either the segregability type analysis raised in one of Judge Kappas' questions, or just the fact for the district court to be more specific in its findings based on more specific declarations from the department, that is a useless gesture here? I realize you don't think it's required, but we're faced with sort of two very, very different approaches here. Well, Your Honor's right that these were two different approaches, and that goes back to the heart of that Judge Gleeson was not conducting a FOIA Exemption 8 argument. And in footnote 2 of my friend's opening brief, he acknowledges that, quote, that the third interest, that is impacting future law enforcement efforts, was too minimal to overcome the public's access right because DOJ had chosen to enter into the Deferred Prosecution Agreement. That sort of balancing, that's almost more akin to like an Exemption 6 type balancing. That's not the type of analysis that's conducted under Exemption 8. And Exemption 8 is written, despite the weighty interests of many of the other FOIA exemptions, including Exemption 1, Exemption 8 is the only one that includes this broad related to language that does make it unique in the statute. I think the breadth of Exemption 8 cuts against you on foreseeable harm, though. I mean, it is super broad. It's written as a prophylactic. So then the foreseeable harm overlay says even for items that fall within the scope of the exemption, you have to figure out whether the underlying interest is served with respect to the material in question, which might, you know, might implicate the harm or it might just be there because the exemption is by design overbroad. So, Your Honor, two points on that. One is that's almost reminiscent of the concurrence from this court's public investors decision in 2014, which said, whoa, Congress, the Exemption 8 is written very broadly and it cried out for maybe there should be congressional action. So then 2016 comes. I'm not criticizing it, I'm just saying that we have a new requirement to apply on top of it. We do, which brings me to my second point, which is when Congress did amend the FOIA in 2016, it specifically cited this court's 1980 decision in Gregory that says that FOIA Exemption 8 has absolute protection and that the amendment was not supposed to be viewed as lessening the protections afforded under FOIA Exemption 8. Now, I think there are many cases where this court could have a lot more to say on the interplay between the foreseeable harm requirement and on Exemption 8. But what I would say is on this record, with these declarations that talk about how harm is reasonably foreseen, if there is disclosure of the report in full or in part, I think on this record, the court need not go particularly far in order to affirm the district court. Can I ask you to shift away from the affidavits for a minute just to the district court opinions? I don't think that the court did a separate segregability analysis with respect to foreseeable harm. And I think he had to. So as I read the district judge, because he says first time around, he says the exemption applies, it's super broad, it covers everything in the report and related to the report. And that takes care of segregability on the underlying exemption. Like, yeah, sure. If the exemption covers everything in the report, nothing in the report is segregable for purposes of Exemption 8. And then in this, but foreseeable harm, open question, need more information. He gets more information. Second opinion comes out and he says segregability, foreseeable harm established kind of at a general level for the report as a whole. Segregability decided by my first opinion. So, as I read the district judge's first opinion is it was saying that Exemption 8 applies and it in that context discussed harm. Now, when it reached second opinion, it noted that there had been additional discussion of foreseeable harm. And it said it had viewed that as being decided in its first opinion. So I would say I do think the district judge at least believed it conducted it. But second, we are on DeNova review of the summary on a summary judgment standard. And I think should we just look through the opinion to the affidavits? I don't think we need to, but I do think we could. And certainly under Rule 50, under this court standards for DeNova review, it has that authority. You argue that, you know, the Congress mentioned Gregory and that we don't mean to affect the scope of Exemption 8. But Congress also carved out Exemption 3 from the foreseeable harm requirement, didn't carve out Exemption 8. So I'm just not sure what to make of that and how to what what are you basing your effectively document level defense of nondisclosure on, given that Congress didn't carve out Section Exemption 8 from the foreseeable harm requirement and that there is evidence that makes it reasonable that a fact finder would conclude that there are portions of this report that might be disclosed. So that could be disclosed without causing harm. So Exemption 3 is the only one that's statutorily carved out from the reasonable harm analysis. That's that's undisputed. The issue, though, is that the harms that are foreseen from Exemption 8, which this court walked through in Consumers Union, are just more apparent in much the same way that, for instance, if this was an Exemption 5 attorney-client privilege case, that the harm that comes from breaking the attorney-client privilege is something that requires a lesser showing than, say, a harm from the deliberative process privilege. And what this court said in the Reporters Committee was that the deliberative process privilege was the heart of why Congress was acting in 2016. And I think it's notable that, you know, this court's two main prior cases on foreseeable harm, Machado Amatis and Reporters Committee, are both deliberate process cases because that's where more of the focus is. So it's just in some ways, though, kind of akin to deliberative process. And I wanted to circle back because you had said it wouldn't protect the confidence in the cooperation with foreign regulators if all reference to their countries and the people that were spoken with and the appendices dealing with the bank in those countries were removed. That still wouldn't satisfy them. And I'm actually having trouble just understanding why that is a problem. And if you could fill me in, that would be helpful. Sure. So and I certainly understand that there's an intuitive appeal to say, look, a foreign regulator should only care about its own information. But that's not what the foreign regulators said. And so since the foreign regulators said that they want the entire report withheld, the agency needs to consider that when it's assessing whether it reasonably foresees harm will ensue. And so I do think that the fact that these foreign regulators were assured confidentiality, both orally and in writing, and informed the district judge in New York as to their positions on this, I think that needs to carry significant weight. And then the harm that comes from the breaking of these promises is that, look, as I mentioned earlier, HSBC Bank had more than 400 regulators. They all need to work together in order to have in today's global world this sort of international cooperation necessary, because not just for HSBCs. Because I'm assuming that regulators in Malaysia and Hong Kong are eager for the cooperation of U.S. regulators. They're certainly eager in certain instances, but they also are dealing with their own laws. So, for instance, in the letter from the UK Financial Conduct Authority regulator, it mentions that release of certain material here may be a violation of U.K. criminal law. And there's, you know, in dealing with more than 400 regulators, there is a litany of other countries' laws that need to be considered. Now, if you're an agency who's just here to assess whether the agency is reasonably foreseeing harm from this, this all needs to go into your analysis in deciding whether you reasonably foresee that harm would occur here. And I just think on this record, there is significant material in the declarations describing that the agency reasonably foresees harm. And it talks about not just that these promises of confidentiality should be protected from, like, you know, a legal abstract position, but also just it goes into the specifics as to, look, if these promises are avoided, then we will have less cooperation. It is less likely that regulated entities will agree to provide the information that we need. And I'll note that the Corporate Compliance Monitor... Not regulated entities, but both. Oh, so the promises... A regulated entity has a lot of incentive under a DPA. It does, but what I'll note is when the Deferred Prosecution Agreement was signed, it came with the Corporate Compliance Monitor Agreement itself. And so in the document itself there, the promise was made that the reports would be kept confidential and full. So just from the get-go, it was. And so that needs to be considered in assessing whether regulated entities will be more likely to provide information. And as this Court said in Consumers Union, when it first really grappled with the text of Exemption 8 and Congress' purpose in assessing the weighty interests involved, one of those key interests was safeguarding the relationships between financial institutions and the regulators. So what about the question that I asked Mr. Matsch, which is, if we were to rule in his favor, can you see that as being limited to the situation of an indictment and a Deferred Prosecution Agreement, and not where you're talking about between bank examiner reports? So I do think we're at the heart of Exemption 8 here, and there's a reason why my friends opening brief and reply brief both confirmed they're not disputing the scope of Exemption 8. But as for the specific question there, look, the monitor was triple-hatted here. This was not just a monitor serving for DOJ in the context of the DPA. It is also the monitor serving for the U.K. Financial Conduct Authority, and the monitor serving as an independent consultant for the Federal Reserve Board. So this monitor report is not just in the context of a Deferred Prosecution Agreement. It's also being used by the Federal Reserve Board as it is regulating this entity. And so I would push back at the notion that this is a report that's outside the heart because of the Federal Reserve Board's triple-hatted role here. But there's an incentive to cooperate here that might be less if there's no Deferred Prosecution Agreement sort of Damocles hanging over the regulated entity's head. I mean, regulators of financial institutions have significant power over financial institutions in other contexts, too. But even if that were enough to somehow lessen the regulated entity's interest in that capacity, it wouldn't speak to the foreign regulators' interests. And those interests really only would apply in contexts similar to this. So I think any ruling that would be about that would risk sort of not getting enough weight to the foreign regulators' lofty interests here. Can you give me an example about the kind of thing a foreign regulator would be worried about? You did say, oh, they were given these assurances. Like, what is going to be, how is there going to be mud on their trousers as a result? Yeah, so one of the things in, I believe it was the monitor's affidavit, was it was talking about how, look, some of these issues that the regulated entity was addressing, issues that needed to be fixed, were things that foreign regulators may have missed in their supervisory review of the regulated entity. And so to the extent that that is that there is a significant risk in their own countries of getting sort of egg on their face, there's also the risk that they have many other financial institutions they regulate, many of which may have similar issues that haven't been rectified. And so they have a risk of harm to their own financial institutions that could cause, especially for a smaller country that doesn't have as strong of an economy, for instance, as the United States, could cause significant damage to those countries' interests. And so just, again, this goes back to whether the agency's reasonably foreseeing harm here once we have all these factors to consider. And we do think that those promises, those assurances of confidentiality in writing and orally need to be upheld, and we strongly believe that this report should be, and was appropriately withheld in full. We're talking about a 2015 report.  A lot of water under the bridge. Is there any lessening of the anticipated harm? The entire bank system has changed, and I assume the deferred prosecution agreement has been concluded. So, yeah, the criminal case is closed. That was closed in 2017. So what I'd say is, again, it goes back to the language in our declarations. And so the declaration specifically addressed whether the termination of that proceeding was sufficient to warrant a different result. And I'd point to AUSA Kessler's affidavit that noted, in another context, on page 26, it said, it is the assessment of the prosecution team in an ongoing criminal prosecution being conducted by USAEOEDNY, which this was written well after the HSBC one was closed, that making the report public at this time would interfere with that prosecution. So there's still many other deferred prosecution agreements continue here regularly. And many of the issues, even issues that have been rectified, continue to plague other financial institutions, both in this country and abroad. One more for me. The closest thing I saw to an explicit analysis of partial redactions on foreseeable harm was the monitors affidavit. And he said, yes, you could release a redacted report, but the problem with that is it might not be persuasive. That's the wrong legal standard for reasonably secondable. Certainly, Your Honor. But what the monitor was talking about was not the harms that are protected by exemption 8, but just whether the monitor's own work would be hurt. That's only one part. So what the monitor said was, I have also considered the possibility that DOJ might file a redacted version of the report. I believe that a redacted report that does not negatively impact the monitor's work can be produced. So it's just talking about the monitor's work in that one particular proceeding. But exemption 8 is broader than that. And exemption 8 is considering not… to the questions we've been discussing. Well, I think, and I think the paragraphs 7 through 12 right before that go through the monitor, who strongly was a strong proponent of the First Amendment right to access. Even the monitor said that this entire report should be withheld in full. So, you know, this has been the government's consistent position for… Since this issue was first raised by a non-party in the EDNY proceeding, we have consistently held that this report should be withheld in full. And we think that on this evidence, with these declarations, we have met our burden here. And I request that the court… Thank you so much. Thank you. So we told Mr. Matsch, we would give him a couple of minutes for rebuttal. Thank you. I'll try to make a few points quickly. On the last point, Judge Katsas, you asked about the monitors, what the monitor was saying. If you look at the three paragraphs, three or four paragraphs above the one that you quoted, he described the precise three interests the DOJ is talking about in this case, protecting foreign regulators, maintaining bank security, and confidentiality. It's clear that he viewed that as part of his work. So to say that, you know, that's not relevant because he didn't… It was part of his work, I think, is to sort of miss the context of those passages. But I think the broader context that Mr. Dreyer was pointing to is that he was considering this prosecution, not those interests as a writ large as applied to the work of the government. I think he was. I mean, let me turn to the… I need to find the report in the declaration here. The affidavit? Yeah, it's a joint appendix, so yeah, 42 to 44. Thank you. So he's talking about, for example, paragraph 11. I believe that maintaining the confidentiality of the report is in the interest of an effective monitorship because it's clear to me that confidentiality encourages cooperation from the employees of HSBC Group. That's true, you know, in the context of a monitorship and outside the context of a monitorship or a deferred prosecution agreement. On the foreign regulators, let me just read a couple of passages from their letters. Joint Appendix 57, Hong Kong. The interest of the Hong Kong monetary authority in this matter is the Hong Kong Country Review Report. Malaysia. Joint Appendix 59. This is in paragraph 2. It's referring to an assurance given to the Bank Negara Malaysia that any information gathered by the monitor from HSBC Malaysia would be used solely for the purposes of evaluating the effectiveness of internal controls, policies, and procedures of HSBC Malaysia. Again, Malaysia specific. And the UK regulator doesn't really say anything about its having received an assurance. I want to talk about the statute. It's incorrect to say that Congress saw Exemption 8 any differently from the other exemptions. The Senate report says something about that. The House report, of course, notes that a House member had attempted to amend the foreseeable harm requirement to not include Exemption 8. That amendment was withdrawn. So any legislative history here is ambiguous. Now, the Senate report also indicates that Exemption 5 was one of the concerns that Congress had here. Of course, if it wanted to apply the foreseeable harm requirement to Exemption 5, it would have done that. It didn't do that. It applied it to all the discretionary exemptions, so all the ones other than Exemption 3. On would not could Judge Rogers, I think that's a good point. I didn't catch the one that Mr. Dreyer quoted in his argument. The one that they rely on their brief is on Joint Appendix 64 from the Mazer Declaration where she uses would. That's a discussion of monitorships in general, not the monitor report at issue in this case. And so that doesn't meet the Reporters Committee burden of referring to this specific material at issue. I just want to close by pointing out that, again, we are not asking for the whole report. We're asking for parts of the report. The DOJ has done no analysis to determine whether those specific parts of the report based on the interest it identifies are exempt. Disclosing any part of this report, which, remember, is very controversial when written remains controversial today, even if small and innocuous could go a long way toward promoting the accountability promised by FOIA and strengthened by the foreseeable harm requirement. If there are no more questions, I'd ask the Court reverse and remand for in-camera review. Thank you both very much. The case is submitted.
judges: Pillard, Katsas, Rogers